Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 05-33443 (LMW) |
| ERIC J. SIMOES AND<br>DAWN M. SIMOES, | ) | CHAPTER | 7 |
| DEBTORS. | ) | | |
| DEBORAH SODERBERG, | ) | ADV. PRO. NO. | 06-3097 |
| PLAINTIFF | ) | DOC. I.D. NO. | 1 |
| vs. | ) | | |
| ERIC J. SIMOES AND<br>DAWN M. SIMOES, | ) | | |
| DEFENDANTS. | ) | | |

## APPEARANCES

Eric M. Gross, Esq.                                    Attorney for Plaintiff
Green & Gross, P.C.
1087 Broad Street
Bridgeport, CT 06604

Mark M. Kratter, Esq.
Kratter & Gustafson, LLC
71 East Avenue, Suite O
Norwalk, CT 06851

## MEMORANDUM OF DECISION

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court is the above-referenced plaintiff's (the "Plaintiff") complaint (A.P. Doc. I.D. No. 1, the "Complaint")[1] pursuant to which the Plaintiff seeks a determination that a certain alleged debt (the "Debt") due from the above-referenced debtors (the "Debtors") is non-dischargeable in this chapter 7 case pursuant to 11 U.S.C. § 523(a)(2).[2] This court has jurisdiction over this proceeding as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of this District (Daly, J.).[3] This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I.  BACKGROUND

### A.  The Chapter 7 Case

This case was commenced by a joint voluntary petition (Case Doc. I.D. No. 2, the "Petition") filed by the Debtors on July 12, 2005. Filed along with the Petition were the Debtors' schedules (collectively, the "Schedules"). A meeting of creditors pursuant to Bankruptcy Code § 341(a) was held on September 13, 2005. The Debtors received their chapter 7 discharge on June 2, 2006. (Case Doc. I.D. No. 17.) The chapter 7 trustee filed a Final Report (Case Doc. I.D. No. 22) on September 5, 2006, a Final Distribution Report (Case Doc. I.D. No. 30) on November 2, 2006, and a

---

[1] References herein to the docket of this adversary proceeding are in the following form: "A.P. Doc. I.D. No. ___." References herein to the docket of this chapter 7 case appear in the following form: "Case Doc. I.D. No. ____."

[2] References herein to title 11 of the United States Code and/or to the Bankruptcy Code are references to the same as they existed prior to their amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[3] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

Completion Report (Case Doc. I.D. No. 31) on March 12, 2007.[4]  The case was closed by clerk's error on March 13, 2007, but subsequently was reopened on March 29, 2007. (Case Doc. I.D. No. 33.)

On July 18, 2006, after the deadline for submitting claims had passed,[5] the Debtors filed (and served upon the Plaintiff) an amendment to the Schedules. (Case Doc. I.D. No. 19.) On Amended Schedule F (Creditors Holding Unsecured Nonpriority Claims) there is listed a disputed "Claim for Breach of Contract regarding [the] sale of real estate sold in 1994 [sic, should be 2004]" in the amount of $1.00 allegedly owing to the Plaintiff.

### B.    The Adversary Proceeding

The Plaintiff commenced this adversary proceeding by timely filing the Complaint on September 6, 2006. (A.P. Doc. I.D. No. 1.) The Complaint alleges that the Debtors are liable to the Plaintiff in the amount of $50,000.00 as the result of alleged false representations and/or fraud. The Complaint further alleges that reliance on such "false and misleading representations" by the Debtors has caused the Plaintiff "direct and proximate" harm. (*Id.*)  Accordingly, the Complaint seeks a determination that the foregoing alleged debt (*i.e.,* the Debt) was not discharged in this case pursuant to Bankruptcy Code § 523(a)(2). An answer to the Complaint was filed by the Debtors on September 25, 2006 denying the substantive allegations. (A.P. Doc. I.D. No. 8.) A trial (the "Trial") on the Complaint was held before this court on March 19, 2007. The Plaintiff testified on her own behalf and brought forth several witnesses. Those witnesses included Denise Cursio (the real estate

---

[4]    About $3,750.00 was distributed to unsecured creditors holding claims in the allowed amount of about $7,215.00. (*See* Case Doc. I.D. Nos. 22, 30.)

[5]    The deadline for submitting proofs of claim was June 5, 2006. (Case Doc. I.D. No. 15.) The Plaintiff did not attempt to obtain relief from that deadline to file a proof of claim.

agent involved in the transaction between the Plaintiff and the Debtors), Jeffrey Nelson (testifying on behalf of Systems (as that term is defined below)), and Dana Soderberg (the daughter of the Plaintiff). The Plaintiff introduced various items of documentary evidence into the record.[6] The Debtors testified on their own behalf and brought forth no other witnesses or exhibits. At the conclusion of the Trial, the court took the matter under advisement subject to post-trial briefing.

As briefing is now complete (including optional answer briefs), the court is prepared to issue this decision on the Complaint.

## II. FACTS

At all relevant times, the Debtors owned a residence (the "Residence") located at 37 Nacca Road, West Haven, Connecticut. The Residence had a finished basement and a full bath (the "Bathroom", collectively with the remainder of the basement, the "Basement"). There was a sump pump (the "Sump Pump") in the Basement. The Debtors had lived in the Residence for about three years and had "lived" in the Basement.[7]

The Residence became too small for the Debtors' family and the Debtors put it on the market some time around early 2004. The Plaintiff had just gone through a divorce and, as a result, the marital home was being sold. Accordingly, the Plaintiff needed to obtain a new residence for herself and her children. The Plaintiff was shown the Residence and became interested in it. A significant reason for her interest was the Basement which, the Plaintiff believed, could be used by her college-student daughter as a bedroom which would give the young woman a significant measure of privacy.

---

[6]    References herein to those exhibits appear in the following form: "Exh. ___."

[7]    Presumably, that means that the Debtors used the Basement as their bedroom.

Around March 20, 2004, the Debtors executed and delivered a "Residential Property Condition Disclosure Report" (the "Disclosure") to the Plaintiff. Item 17 of the Disclosure provided for disclosure of any "BASEMENT Water/Seepage/Dampness." (*See* Exh. B at 2.) The Debtors checked the box marked "NO" before Item 17. (*See id.*)

Some time before June 10, 2004 but after the execution and delivery of the Disclosure, the Debtors experienced some water in the Basement (the "2004 Water Event"). Mr. Simoes called Connecticut Basement Systems, Inc. (collectively with any successors in interest, "Systems") to come to the Residence to assess the situation. Systems made certain recommendations (the "2004 Recommendations") including installation of a new "SuperSump" pump with a "WaterWatch Alarm"[8] and installation of a thirty-six foot "WaterGuard" system.[9] (*See* Exh. K.) The "WaterGuard" system would have been installed along fifteen feet of the Basement's exterior wall on the side of the Residence with the Bathroom on it, and twenty-one feet of the Basemen's exterior wall on the front of the Residence. (*See* Exh. K.) No portion of the implementation of the 2004 Recommendations would have taken place inside the Bathroom. (*See id.*) Systems quoted the cost of implementing the 2004 Recommendations at $2,430.00. (*Id.*) The Debtors (or at least Mr. Simoes) elected not to implement the 2004 Recommendations. Instead, Mr. Simoes claims to have diagnosed a "blockage" issue with the Sump Pump. He cleared the "blockage" by "snaking" out the line from the Sump Pump to the sewer outside. Mr. Simoes claims that he thought that the foregoing

---

[8]   A "WaterWatch Alarm" sounds when a sump pump should be working but is not.

[9]   A WaterGuard system appears to be a drainage channel system installed beneath the basement floor.

- 5 -

was the end of the Basement's water problems. The Debtors did not amend the Disclosure to reflect the 2004 Water Event and did not disclose the 2004 Recommendations to the Plaintiff.

On or about August 2, 2004, the Plaintiff entered into a contract to purchase the Residence for a purchase price of $210,000.00. (*See* Exh. A.)[10] The Plaintiff had a home inspection of the Residence performed by a licensed home inspector around August 10, 2004. (*See* Exh. C.) The inspection report stated in relevant part:

> There is a sump pump in the basement. The basement has been finished and there does not appear to be any significant evidence of seepage. It is recommended [that] the buyer ask the current homeowner if water enters the basement during heavy or prolonged rain.

(Exh. C at 3 (item 10).) Some time before the closing (which was around the end of August or the beginning of September, 2004) the Plaintiff (accompanied by her agent, her daughter and Mrs. Simoes) had the final "walkthrough" of the Residence. At that time, the Plaintiff asked Mrs. Simoes if there had ever been any water in the Basement and Mrs. Simoes said that there had not. The sale of the Residence closed and the Plaintiff took possession of the Residence.

Beginning in March of 2005, the Plaintiff began to have water problems in the Basement. In March of 2005, there was "significant" water in the Bathroom. (*See* Oral Record at 11:30:07 – 11:30:10 (testimony of the Plaintiff).) The Sump Pump was working at the time and "there was nothing wrong with the [S]ump [P]ump." (Oral Record at 11:40:51 – 11:40:55 (testimony of the Plaintiff).) In October of 2005, there was a more significant incident when water came from the Bathroom into the daughter's bedroom and the furnace room. (*See* Oral Record at 11:30:19 – 11:30:50 (testimony of the Plaintiff).) Finally, in January of 2006 after a heavy rain, there was an

---

[10]   The copy of the contract in the record is unsigned by the Debtors.

- 6 -

even more significant incident when water came in "everywhere [in the Basement] . . . for days . . . ." (Oral Record at 11:30:55 – 11:31:12 (testimony of the Plaintiff).)[11]

Around January of 2006, the Plaintiff contacted Systems to assess the situation in the Basement. Systems recommended (the "2006 Recommendations") the following to remediate the Basement's water problems: 120 feet of "Full Perimeter WaterGuard Drain System - Including 4 [feet] . . . of Trench Drain" and "1 Complete Triple Safe Sump Pump System - Discharge 50 Feet To Daylight." (Exh. J.) The "WaterGuard Drain System" would have been installed along all of the Basement's exterior walls (including the Bathroom). Systems quoted the cost of implementing the 2006 Recommendations at $7,420.00 (less a $400.00 discount). As a result of the Later Water Events, the Basement developed a mold problem. The cost of remediating the mold problem and demolition/reconstruction/electrical and/or other repair work (not all of which has been undertaken) required in connection with the 2006 Recommendations, the referenced mold problem and/or otherwise related to damage caused by the Later Water Events has been quoted and/or invoiced at $33,823.86 (in the aggregate and including the $7,020.00 quoted by Systems). (*See* Exhs. E, F, G, H, I, J.) The Plaintiff claims the foregoing as the amount of the Debt.

### III.    ANALYSIS

#### A.    Legal Standard

Bankruptcy Code § 523(a)(2)(A) excepts from discharge "any debt – for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C.A. § 523(a)(2) (West 2005). To establish nondischargeability under Bankruptcy Code § 523(a)(2)(A), the Plaintiff must prove the

---

[11]    The three incidents are hereafter referred to collectively as the "Later Water Events."

following: (1) the Debtors made representations; (2) knowing them to be false; (3) with the intent and purpose of deceiving the Plaintiff; (4) upon which representations the Plaintiff actually and justifiably relied; and (5) which proximately caused the alleged loss or damage sustained by the Plaintiff. *See AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001) (*en banc*); *Rosenblit v. Kron (In re Kron)*, 240 B.R. 164, 165 (Bankr. D. Conn. 1999) (Krechevsky, J.). The Plaintiff must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Exceptions to discharge must be strictly construed in favor of the debtor in order to effectuate the fresh start policy of bankruptcy. *Kron, supra* at 165. Furthermore, the "debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." *Id.* at 165-66.

B. **Application of Law to Fact**

Arguably, the Debtors should have informed the Plaintiff of the 2004 Water Event and the 2004 Recommendations. However, even assuming the foregoing, the Plaintiff cannot prevail. That is because, for the reasons discussed below, the court is not persuaded that any such misrepresentation and/or nondisclosure was the proximate cause of the damage claimed by the Plaintiff.

If the Debtors had timely disclosed the 2004 Water Event to the Plaintiff, one of four things would have happened: (1) the Plaintiff would have closed the sale without condition or price adjustment; (2) the Plaintiff would not have closed the sale; (3) the Plaintiff would have required the Debtors to implement the 2004 Recommendations prior to closing the sale; or (4) the Plaintiff would have required the Debtors to adjust the purchase price prior to closing the sale to reflect that the 2004

Recommendations had not been implemented. If "(1)" had occurred, the Plaintiff would have no claim against the Debtors. The court is not persuaded that "(2)" would have occurred. That is because the Plaintiff did not testify that, had she known about the 2004 Water Event and the 2004 Recommendations, she would not have purchased the Residence. Rather, the testimony was as follows:

> Q. Had you seen anything with respect to water seepage or water damage or water at all, would you have purchased the home?
>
> A. I'm not sure. I wasn't given the opportunity with the correct information to make a correct assumption but I don't know. But if I knew that I had water, it would have been a whole different issue.

(Oral Record at 11:39:47 – 11:40:09 (direct examination of the Plaintiff).)

Furthermore, the court is not persuaded that the proximate cause element would be satisfied here if either "(3)" or "(4)" had occurred. That is because the court is not persuaded that, even if the 2004 Recommendations had been fully implemented, the Plaintiff would not be in the same position she is now. The first two of the Later Water Events appear to have emanated from the Bathroom. However, as noted above, implementation of the 2004 Recommendations would not have affected the Bathroom. Moreover, there was testimony that the Sump Pump was working during the first of the Later Water Events and no testimony that the Sump Pump failed to operate during the later two such events. Finally, because the third Later Water Event is described as so catastrophic and the 2006 Recommendations so far exceeded in scope the 2004 Recommendations, the court is not persuaded that the third such event would not have occurred even it the 2004 Recommendations had been implemented fully.

**IV.    CONCLUSION**

For the reasons set forth above, the court concludes that the Plaintiff has failed to carry her burden under Section 523(a)(2). Accordingly, the Debt has been discharged in this case. Judgment to that effect will enter.

Dated: July 6, 2007                                                                BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
United States Bankruptcy Judge